FILED
2026 Mar-18  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

CHRISTOPHER HOEHN &
ASHLEY HOEHN

    Plaintiffs,

v.

STOCKTON MORTGAGE
CORPORATION & JOHN DOES 1–10,

    Defendants.

Case No. 26-CV-_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Ashley Hoehn and Christopher Hoehn, by and through their undersigned counsel, hereby bring these claims against Defendant Stockton Mortgage Corporation ("Stockton") and Does 1-10.

## INTRODUCTION

1.  From financial and tax information to purchasing history to intimate messages with loved ones, personal email accounts often contain some of the most private and sensitive information about a person.

2.  Given the uniquely sensitive nature of this data, people secure their personal email accounts through passwords and other measures designed to keep others from accessing an account without their authorization.

3. From May 28, 2024 to September 22, 2025 and November 4, 2024 to September 22, 2025, respectively, Ashley Hoehn and Christopher Hoehn were employed as loan officers by Stockton.

4. During their respective periods of employment, both Christopher Hoehn and Ashley Hoehn were each issued a laptop computer by Stockton.

5. On September 22, 2025, shortly before they intended to give notice that they were terminating their employment with Stockton, both Christopher and Ashley Hoehn lost access to their Stockton laptop computers.

6. Specifically, the Hoehns' credentials no longer permitted them to get past the login screen of the laptops or access any programs on their Stockton laptops.

7. On or about October 21, 2025, the Hoehns returned their Stockton laptops to Stockton's office location in Huntsville, Alabama.

8. Stockton, through its employees and agents, designated herein as "Doe Defendants" and who, upon information and belief, will be identified through discovery, violated the privacy of its employees, including Plaintiffs Christopher Hoehn and Ashley Hoehn, by accessing their personal email accounts without their permission.

9. Specifically, between at least August 2025 and November 2025, Stockton and the Doe Defendants surreptitiously and without authorization accessed

Christopher Hoehn's and Ashley Hoehn's personal Gmail accounts and acquired numerous personal emails.

10.    Indeed, Stockton and the Doe Defendants went so far as to access and take emails from the Hoehns' private email accounts even after Mr. and Mrs. Hoehn were no longer employed by Stockton.

11.    Further, Stockton and the Doe Defendants accessed the Hoehns' private email accounts after the Hoehns could no longer use their Stockton-issued laptops.

12.    Stockton and the Doe Defendants also continued to access the Hoehns' private email after the Hoehns returned the devices to Stockton.

13.    Compounding the harm of this invasion of privacy, Stockton published copies of the Hoehns' personal emails.

14.    Specifically, Stockton attached the Hoehns' personal emails as exhibits to three publicly filed civil complaints (the initial complaint and two subsequent amended complaints), that Stockton filed against Mr. and Mrs. Hoehn and other former Stockton employees.

15.    Indeed, Stockton attached an email containing unredacted, sensitive, and personal financial information of Mr. and Mrs. Hoehn, further intentionally invading their personal privacy, violating their rights, and exposing them to ongoing risk of identity theft and financial harm.

3

16.    As a result, both Christopher Hoehn and Ashley Hoehn have suffered and will continue to suffer significant loss and harm because of Stockton's and the Doe Defendants' unauthorized access to and improper handling, sharing, and disclosure of their private and sensitive data.

17.    Stockton's and the Doe Defendants' violations were willful and intentional and therefore also merit punitive damages under relevant federal law.

## PARTIES

18.    Ashley Hoehn, formerly known as Ashley Davis, is an individual who resides in Madison County, Alabama, and previously worked for Stockton.

19.    Christopher Hoehn is an individual who resides in Madison County, Alabama, and previously worked for Stockton.

20.    Mr. and Mrs. Hoehn are married and reside together.

21.    Stockton is a Kentucky corporation with its principal place of business in Frankfort, Kentucky.

22.    Doe Defendants 1-10 are employees, executives, agents, attorneys, and/or contractors of Stockton, the identities of whom are unknown (and unknowable) at this time but who will be identified via discovery and who will be named in due course.

4

## JURISDICTION AND VENUE

23.    This Court has original jurisdiction over the federal statutory claims pursuant to 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims because all of the claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in Madison County, Alabama, which lies within the Northern District of Alabama. During the relevant period, Plaintiffs resided and were physically employed by Stockton in Madison County.

25.    This Court has personal jurisdiction over Stockton because Stockton conducted business in, directed harm toward Plaintiffs in, and has contacts with, the State of Alabama, including that Stockton is registered to do business in Alabama with the Alabama Secretary of State.

## FACTUAL ALLEGATIONS

**Ashley Hoehn Never Authorized Stockton to Access Her Personal Email Account**

26.    Ashley Hoehn has a personal email account through Google LLC's ("Google") Gmail service and has used that email account since on or about August 5, 2024 (the "Ashley Gmail Account").

27.    Upon information and belief, the Ashley Gmail Account and the data contained therein reside on one or more "protected computers" as relevant statutes, regulations, and caselaw define that term.

28.    Mrs. Hoehn has a password for the Ashley Gmail Account and keeps that password confidential.

29.    Mrs. Hoehn uses the Ashley Gmail Account for a variety of personal and sensitive matters, including managing her family's finances, communicating with her husband Christopher Hoehn, and communicating with her five (5) children.

30.    Stockton hired Mrs. Hoehn on May 28, 2024, and employed her as a loan officer.

31.    As part of her employment, Mrs. Hoehn signed an "employee handbook" that Stockton provided.

32.    Upon information and belief, the handbook contained language that stated that Stockton "may monitor access to and use of its equipment and electronic

6

communications systems, including but not limited to original and backup copies of email, instant messaging, voicemail and internet use" and that the employee "should not expect privacy in any connection with your use of any company resources, equipment, or property."

33.    As reflected in the quoted language in the previous paragraph, Stockton explicitly limited its notice of monitoring to Stockton's own electronic communications systems.

34.    Stockton did not provide any notice about monitoring (let alone accessing and extracting data from) private email accounts maintained by third-party systems, like the Ashley Gmail Account.

35.    Upon information and belief, nothing in the materials reviewed or signed by Mrs. Hoehn advised her that she was giving Stockton or the Doe Defendants authorization to affirmatively access any personal email account, including the Ashley Gmail Account.

36.    Upon information and belief, Stockton and the Doe Defendants never affirmatively and explicitly requested authorization to access the Ashley Gmail Account for the purpose of reviewing and taking emails and other data.

37.    At no time did Ashley Hoehn affirmatively and explicitly authorize Stockton or the Doe Defendants to access the Ashley Gmail Account.

7

38. Mrs. Hoehn was able to access the Ashley Gmail Account from her Stockton-issued Windows computer and did so on a periodic basis.

39. Mrs. Hoehn's last day of employment with Stockton was September 22, 2025.

40. Approximately two weeks prior to Mrs. Hoehn's last day of employment with Stockton, Mrs. Hoehn affirmatively signed out of the Ashley Gmail Account on her Stockton-issued computer.

41. Upon information and belief, Stockton terminated Mrs. Hoehn's access to her Stockton-issued device on or about September 22, 2025.

42. Mrs. Hoehn does not own a personal Windows-based computer and did not access the Ashley Gmail Account from a Windows-based device after September 22, 2025.

43. Mrs. Hoehn returned her Stockton-issued laptop to Stockton on or about October 21, 2025.

**Christopher Hoehn Never Authorized Stockton to Access His Personal Email Account**

44. Christopher Hoehn has a personal email account with Google's Gmail service and has used this email account since on or about July 21, 2012 (the "Chris Gmail Account").

8

45. Upon information and belief, the Chris Gmail Account and the data contained therein reside on one or more "protected computers" as relevant federal statute, regulations and caselaw define that term.

46. Mr. Hoehn has a password for the Chris Gmail Account and keeps that password confidential.

47. Mr. Hoehn uses the Chris Gmail Account for a variety of personal and sensitive matters, including managing his family's finances, personal correspondence with family and his wife Ashley Hoehn, and managing medical appointments.

48. Stockton hired Mr. Hoehn on November 4, 2024, and employed him as a loan officer.

49. As part of his employment, Mr. Hoehn signed an "employee handbook" that Stockton provided.

50. Upon information and belief, the handbook contained language that stated that Stockton "may monitor access to and use of its equipment and electronic communications systems, including but not limited to original and backup copies of email, instant messaging, voicemail and internet use" and that the employee "should not expect privacy in any connection with your use of any company resources, equipment, or property."

51. As reflected in the quoted language in the previous paragraph, Stockton explicitly limited its notice of monitoring to Stockton's own electronic communications systems.

52. Stockton did not provide any notice about monitoring (let alone accessing and extracting data from) private email accounts maintained by third-party systems, like the Chris Gmail Account.

53. Upon information and belief, nothing in the materials reviewed or signed by Mr. Hoehn advised him that he was giving Stockton or the Doe Defendants authorization to affirmatively access any personal email account, including the Chris Gmail Account.

54. Upon information and belief, Stockton and the Doe Defendants never affirmatively and explicitly requested authorization to access the Chris Gmail Account for the purpose of reviewing and taking emails and other data.

55. At no time did Christopher Hoehn affirmatively and explicitly authorize Stockton or the Doe Defendants to access the Chris Gmail Account.

56. Mr. Hoehn was able to access the Chris Gmail Account from his Stockton-issued Windows computer and did so on only one occasion.

57. In or about November 2024, Mr. Hoehn affirmatively signed out of the Chris Gmail Account from his Stockton-issued computer and did not access it again for the duration of his employment with Stockton.

10

58.    Mr. Hoehn's last day of employment with Stockton was September 22, 2025.

59.    Mr. Hoehn returned his Stockton-issued laptop to Stockton on or about October 21, 2025.

**Stockton Repeatedly Accessed Personal Email Accounts Without Authorization**

60.    Beginning in or around August 2025, Stockton and the Doe Defendants repeatedly accessed the Ashley Gmail Account without authorization from Ashley Hoehn.

61.    Beginning in or around August 2025, Stockton and the Doe Defendants accessed the Chris Gmail Account without authorization from Christopher Hoehn.

62.    On or about October 22, 2025, Stockton filed a Verified Complaint in the United States District Court for the Northern District of Alabama,[1] asserting, *inter alia,* individual causes of action against Christopher Hoehn and Ashley Hoehn and other former employees related to their former employment and subsequent termination from Stockton (the "Stockton Employment Litigation").

63.    On or about November 3, 2025, Stockton filed a First Amended Verified Complaint (the "Amended Complaint") in the Stockton Employment Litigation.[2]

---

[1] *See Stockton Mort. Corp. v. Ixonia Bancshares Inc., et al.*, No. 5:25-CV-01840 (LCB) (N.D. Ala.) (Dkt. Entry No. 1).

[2] *See id*. (Dkt. Entry No. 19).

64.     On or about March 3, 2026, Stockton filed a Second Amended Verified Complaint (the "Second Amended Complaint") in the Stockton Employment Litigation.[3]

65.     The exhibits attached by Stockton to its Verified Complaint, Amended Complaint, and the Second Amended Complaint (together the "Complaints") include private emails sent to or from the Ashley Gmail Account.

66.     The exhibits attached by Stockton to the Complaints include private emails sent to or from the Chris Gmail Account.

67.     The exhibits attached by Stockton to the Complaints were not filed under seal or otherwise redacted to protect personal, sensitive information taken from Christopher Hoehn and Ashley Hoehn.

68.     For example, Stockton's exhibits include an email between Christopher Hoehn and a third party at a financial institution that discusses a personal loan, Mr. Hoehn's salary, and other sensitive financial information.

69.     Upon information and belief, companies and individuals routinely collect or "scrape" data from public filings on electronic court dockets. The data can then be sold by "data brokers" to others who seek to use this information for a variety of purposes, ranging from relatively benign but unpleasant unsolicited targeted

---

[3] *See id*. (Dkt. Entry No. 71).

marketing activities to criminal conduct such as identity theft or fraudulent activity that relies on sensitive or private information about a person.

70.     Thus, not only did Stockton and the Doe Defendants victimize Ashley Hoehn and Christopher Hoehn when they hacked their personal email accounts, but Stockton and the Doe Defendants made it possible for others to victimize them in the future by giving public access to those who may be interested in misusing their sensitive and private information.

71.     Upon information and belief and based on Stockton's access to and publication of an email about Mr. Hoehn's personal finances, Stockton accessed without authorization and reviewed numerous other emails contained in the Chris Gmail Account that are private, sensitive, and personal in nature.

72.     Upon information and belief and based on Stockton's access to and publication of an email about Mrs. Hoehn's personal finances, Stockton accessed without authorization and reviewed numerous other emails contained in the Ashley Gmail Account that are private, sensitive, and personal in nature.

73.     Upon information and belief, certain forensic imaging and data collection tools offer the capability not only to review data contained on a physical computer device (like a computer or mobile phone) but can also allow a user of the tool to go onto the internet and access data contained on other protected computers, including personal email accounts.

13

74. The emails attached to Stockton's Complaints contain information that indicates Stockton and the Doe Defendants used a forensic tool to access both the Ashley Gmail Account and Chris Gmail Account.

75. The emails attached as exhibits to Stockton's Complaints each bear metadata[4] stamps, including a "Mail Date" and an "Event Date."

76. Upon information and belief, the "Mail Date" is the date the email was sent.

77. Upon information and belief, the "Event Date" is not a category of metadata provided for emails contained in a Gmail account. That Google does not provide an "Event Date" metadata category indicates that the emails were not obtained directly from Google or from a person who could download or print out the emails because they were a sender or recipient.

78. However, upon information and belief, it is common for forensic investigation tools to capture an "Event Date," or similarly titled category of metadata. This metadata is typically intended to identify when a particular email or other piece of data on a computer was accessed by a user of the forensic tool for, among other reasons, auditing and tracking purposes

---

[4] "Metadata" is typically understood to be "data about data" that is separate from the underlying content of data itself. Common examples of metadata include the "To," "From," and "CC" fields in emails, the file path where a piece of data is located, and the date in which the data was first created. *See, e.g.,* IBM Website, "What is metadata?" available at https://www.ibm.com/think/topics/metadata (last visited Mar. 14, 2026).

14

79. Accordingly, upon information and belief, the "Event Date" for the emails attached to the Stockton Complaints reflects the date on which the personal emails of Christopher Hoehn and Ashley Hoehn were accessed and taken by Stockton.

80. The "Event Date" on the personal emails of Christopher Hoehn and Ashley Hoehn that were attached to the Complaints reflect three different dates: August 26, 2025, September 8, 2025, and September 23, 2025.

81. The Event Date therefore indicates that Stockton and the Doe Defendants accessed the Ashley Gmail Account and Chris Gmail Account to take Ashley Hoehn's and Christopher Hoehn's personal emails on at least three different occasions.

82. Stockton and the Doe Defendants never sought authorization to access Christopher Hoehn's or Ashley Hoehn's personal email accounts, and Stockton and the Doe Defendants never advised Mr. or Mrs. Hoehn that Stockton would monitor their personal communications systems, such as Gmail.

83. Accordingly, Stockton's and the Doe Defendants' access to the Ashley Gmail Account and Chris Gmail Account on August 26, 2025 and September 8, 2025 were without authorization.

**Stockton Accessed, Without Authorization, the Personal Email Accounts of Christopher Hoehn and Ashley Hoehn After They Stopped Working for the Company**

84. Both Christopher Hoehn's and Ashley Hoehn's last day of employment with Stockton was September 22, 2025.

85. Both Christopher Hoehn and Ashley Hoehns' access to their respective Stockton-issued devices terminated on the same date that their employment ended with Stockton.

86. Neither Christopher Hoehn nor Ashley Hoehn had the ability to use their Stockton-issued laptops after September 22, 2025.

87. Stockton and the Doe Defendants never advised Mr. or Mrs. Hoehn that Stockton and the Doe Defendants would monitor their personal communications systems, such as Gmail, after they left Stockton's employment.

88. Stockton and the Doe Defendants never sought authorization to access Christopher Hoehn's or Ashley Hoehn's personal email accounts after they left Stockton's employment.

89. Accordingly, Stockton's and the Doe Defendants' access to the Ashley Gmail Account and Chris Gmail Account after September 22, 2025 was without authorization.

90. Nevertheless, Stockton and the Doe Defendants took at least six emails from Ashley Hoehn's and Christopher Hoehn's personal email accounts after they left Stockton's employ and then attached those emails to its Complaints.

91. Additionally, data available to Ashley Hoehn through the Ashley Gmail Account shows that the Ashley Gmail Account was accessed by a Windows-based computer as recently as November 1, 2025, more than a month after Mrs. Hoehn ceased working for Stockton and after Mr. and Mrs. Hoehn returned their computers to the company.

92. Mrs. Hoehn does not have a personal Windows-based computer and, upon information and belief, did not access the Ashley Gmail Account from a Windows-based computer except when she worked for Stockton.

93. Stockton and the Doe Defendants continued to access the Ashley Gmail Account for months after Ashley Hoehn was no longer employed with Stockton, and no longer had her Stockton-issued laptop.

94. Stockton and the Doe Defendants' access to the Ashley Gmail Account after Ashley Hoehn was no longer employed with Stockton was done without Mrs. Hoehn's authorization.

17

**Stockton Wrongfully Accessed Stored Data Without Authorization**

95. Personal email accounts hosted by third parties, such as the Ashley Gmail Account and Chris Gmail Account, operate as places where individuals store data.

96. For example, an email may be sent to a Gmail account, where it is stored on Google servers until the Gmail account user accesses their account and then opens and reads the email.

97. The Stored Communications Act (SCA) prohibits intentionally accessing without authorization, or exceeding authorization to access, a facility through which an electronic communication service is provided and thereby obtaining access to a wire or electronic communication while it is in electronic storage. *See* 18 U.S.C. § 2701.

98. Upon information and belief, Stockton and the Doe Defendants accessed multiple emails that were unread by Christopher Hoehn and held in electronic storage by Google in the Chris Gmail Account.

99. Upon information and belief, Christopher Hoehn had not yet opened or read one or more of the emails before they were taken without authorization by Stockton and the Doe Defendants, and thus the email was "in electronic storage."

18

100.   Upon information and belief, Stockton and the Doe Defendants accessed multiple emails that were unread by Ashley Hoehn and held in electronic storage by Google in the Ashley Gmail Account.

101.   Upon information and belief, Ashley Hoehn had not yet opened or read one or more of the emails before they were taken without authorization by Stockton and the Doe Defendants, and thus the email was "in electronic storage" as that term is defined by federal law and caselaw.

**Stockton's Admission of Access to the Gmail Accounts and Refusal to Produce Records**

102.   After Stockton filed its Complaints with the Hoehns' personal emails as exhibits, Plaintiffs' counsel reached out to Stockton to invite a good-faith discussion, and to seek explanation for Stockton's access and extraction of data from the Chris Gmail Account and Ashley Gmail Account.

103.   In response, Stockton, through counsel, denied any unauthorized access.

104.   Stockton further represented that the personal emails were captured by a "Data Loss Prevention ('DLP') service" that captures certain data that is "loaded" onto a Stockton device, like a Stockton-issued laptop computer.

105.   Stockton further claimed that Christopher Hoehn and Ashley Hoehn did not return their Stockton laptop computers until December 24, 2025, and used those

devices during that time to write, send and receive emails from the Chris Gmail Account and Ashley Gmail Account.

106. Plaintiffs' counsel provided information to Stockton that these representations were not correct.

107. For example, Plaintiffs' counsel produced evidence that Stockton possessed the Hoehn's devices by no later than October 30, 2025.

108. Plaintiffs' counsel requested records and information in Stockton's possession that could help further clarify how Stockton gained access to the Chris Gmail Account and/or Ashley Gmail Account.

109. Stockton refused to produce any such records or information.

110. Absent such contrary information, the only explanation consistent with the technical evidence is that Stockton or the Doe Defendants accessed the Chris Gmail Account and Ashley Gmail Account without authorization.

## COUNT I
### (Violation of Computer Fraud and Abuse Act as to Ashley Hoehn)

111. Ashley Hoehn repeats and realleges the foregoing allegations as if fully set forth herein.

112. Stockton and the Doe Defendants violated and attempted to violate Title 18, United States Code, Section 1030.

20

113.   Title 18, United States Code, Section 1030(g) allows any injured person to maintain a civil action against the violator of Title 18, United States Code, Section 1030 to obtain compensatory damages and injunctive relief or other equitable relief.

114.   The Ashley Gmail Account is a "data storage facility or communication facility" as defined by Title 18, United States Code, Section 1030(e)(1) and thus is a "protected computer" as defined by Title 18, United States Code, Section 1030(e)(2)(B) because it is "used in or affecting interstate commerce or communication."

115.   Stockton and the Doe Defendants violated and attempted to violate Title 18, United States Code, Section 1030(a)(2)(C) because it and they intentionally accessed and attempted to access protected computers without authorization, or in the alternative, exceeded any limited authorization granted to Stockton and the Doe Defendants, and obtained sensitive financial and personal information from the Ashley Gmail Account.

116.   Stockton's and the Doe Defendants' access was without authorization, or exceeded authorization, because Ashley Hoehn never authorized Stockton or the Doe Defendants to access the Ashley Gmail Account during her employment with Stockton.

117.   Stockton's and the Doe Defendants' access was also without authorization because Ashley Hoehn did not authorize Stockton or the Doe

21

Defendants to access the Ashley Gmail Account after she was no longer employed with Stockton.

118. Stockton's and the Doe Defendants' actions caused Ashley Hoehn to incur a loss, as defined by Title 18, United States Code, Section 1030(e)(11), in an amount in excess of $5,000 during a one-year period.

119. Ashley Hoehn is entitled to be compensated for losses and any other amount to be proven at trial.

## COUNT II
**(Violation of Computer Fraud and Abuse Act as to Christopher Hoehn)**

120. Christopher Hoehn repeats and realleges the foregoing allegations as if fully set forth herein.

121. Stockton and the Doe Defendants violated and attempted to violate Title 18, United States Code, Section 1030.

122. Title 18, United States Code, Section 1030(g) allows any injured person to maintain a civil action against the violator of Title 18, United States Code, Section 1030 to obtain compensatory damages and injunctive relief or other equitable relief.

123. The Chris Gmail Account is a "data storage facility or communication facility" as defined by Title 18, United States Code, Section 1030(e)(1) and thus is a "protected computer" as defined by Title 18, United States Code, Section 1030(e)(2)(B) because it is "used in or affecting interstate commerce or communication."

124.   Stockton and the Doe Defendants violated and attempted to violate Title 18, United States Code, Section 1030(a)(2)(C) because it and they intentionally accessed and attempted to access protected computers without authorization, or in the alternative, exceeded any limited authorization granted to Stockton and the Doe Defendants, and obtained and published sensitive financial and personal information from the Chris Gmail Account.

125.   Stockton's and the Doe Defendants' access was without authorization, or exceeded authorization, because Christopher Hoehn never authorized Stockton or the Doe Defendants to access the Chris Gmail Account during his employment with Stockton.

126.   Stockton's and the Doe Defendants' access was also without authorization because Christopher Hoehn did not authorize Stockton or the Doe Defendants to access the Chris Gmail Account after he was no longer employed with Stockton.

127.   Stockton's and the Doe Defendants' actions caused Christopher Hoehn to incur a loss as defined by Title 18, United States Code, Section 1030(e)(11), in an amount in excess of $5,000 during a one-year period.

128.   Christopher Hoehn is entitled to be compensated for losses and any other amount to be proven at trial.

## COUNT III
### (Violation of the Stored Communications Act as to Ashley Hoehn)

129.   Ashley Hoehn repeats and realleges the foregoing allegations as if fully set forth herein.

130.   Stockton and the Doe Defendants willfully and intentionally violated and attempted to violate Title 18, United States Code, Section 2701.

131.   Title 18, United States Code, Section 2707, which allows any injured person to maintain a civil action against the violator of Title 18, United States Code, Section 2701 to obtain compensatory damages of at least $1,000, punitive damages for willful or intentional violations, and reasonable attorneys' fees and other litigation costs.

132.   The Ashley Gmail Account is a "facility through which an electronic communication service is provided" pursuant to Title 18, United States Code, Section 2701(a).

133.   Stockton and the Doe Defendants willfully and intentionally violated and attempted to violate Title 18, United States Code, Section 2701(a) because it and they intentionally accessed and attempted to access protected computers without authorization, or in the alternative, exceeded any limited authorization granted to Stockton and the Doe Defendants, and obtained sensitive financial and personal information from the Ashley Gmail Account while that data was in electronic storage.

24

134. The data was in electronic storage because, among other reasons, emails were accessed by Stockton and the Doe Defendants in the Ashley Gmail Account before they were opened or read by Ashley Hoehn.

135. Stockton's and the Doe Defendants' access was without authorization, or exceeded authorization, because Ashley Hoehn never authorized Stockton or the Doe Defendants to access the Ashley Gmail Account during her employment with Stockton.

136. Stockton's and the Doe Defendants' access was also without authorization because Ashley Hoehn did not authorize Stockton or the Doe Defendants to access the Ashley Gmail Account after she was no longer employed with Stockton.

137. Stockton's and the Doe Defendants' actions caused Ashley Hoehn to incur damages as defined by Title 18, United States Code, Section 2707(c), and she is entitled to be compensated for losses and any other amount to be proven at trial.

138. Because Stockton's and the Doe Defendants' conduct was willful and intentional, Ashley Hoehn is also entitled to punitive damages.

## COUNT IV
**(Violation of the Stored Communications Act as to Christopher Hoehn)**

139. Christopher Hoehn repeats and realleges the foregoing allegations as if fully set forth herein.

25

140. Stockton and the Doe Defendants willfully and intentionally violated and attempted to violate Title 18, United States Code, Section 2701.

141. Christopher Hoehn brings this claim under Title 18, United States Code, Section 2707, which allows any injured person to maintain a civil action against the violator of Title 18, United States Code, Section 2701 to obtain compensatory damages of at least $1,000, punitive damages for willful or intentional violations, and reasonable attorneys' fees and other litigation costs.

142. The Chris Gmail Account is a "facility through which an electronic communication service is provided" pursuant to Title 18, United States Code, Section 2701(a).

143. Stockton and the Doe Defendants willfully and intentionally violated and attempted to violate Title 18, United States Code, Section 2701(a) because it and they intentionally accessed and attempted to access protected computers without authorization, or in the alternative, exceeded any limited authorization granted to Stockton and the Doe Defendants, and obtained sensitive financial and personal information from the Chris Gmail Account while that data was in electronic storage.

144. The data was in electronic storage because, among other reasons, emails were accessed by Stockton before they were opened or read by Christopher Hoehn.

145. Stockton's and the Doe Defendants' access was without authorization, or exceeded authorization, because Christopher Hoehn never authorized Stockton or the Doe Defendants to access the Chris Gmail Account during his employment with Stockton.

146. Stockton's and the Doe Defendants' access was also without authorization because Christopher Hoehn did not authorize Stockton or the Doe Defendants to access the Chris Gmail Account after he was no longer employed with Stockton.

147. Stockton's and the Doe Defendants' actions caused Christopher Hoehn to incur damages as defined by Title 18, United States Code, Section 2707(c), and he is entitled to be compensated for losses and any other amount to be proven at trial.

148. Because Stockton's and the Doe Defendants' conduct was willful and intentional, Christopher Hoehn is also entitled to punitive damages.

**COUNT V**
**(Violation of the Alabama Digital Crime Act as to Ashley Hoehn)**

149. Ashley Hoehn repeats and realleges the foregoing allegations as if fully set forth herein.

150. Stockton and the Doe Defendants violated and attempted to violate Ala. Code § 13A-8-112.

151. Ashley Hoehn brings this claim under Alabama law, which authorizes a private right of action for the Alabama Digital Crime Act.

27

152.    Stockton and the Doe Defendants violated and attempted to violate Ala. Code § 13A-8-112(a)(3) because Stockton and the Doe Defendants, without authority or in excess of any limited authority it or they was/were granted, "disclos[ed], us[ed], control[ed], or [took]" data from a computer, computer system or network, specifically the Ashley Gmail Account.

153.    Stockton's and the Doe Defendants' access was without authorization, or exceeded authorization, because Ashley Hoehn never authorized Stockton or the Doe Defendants to access the Ashley Gmail Account during her employment with Stockton.

154.    Stockton's and the Doe Defendants' access was also without authorization because Ashley Hoehn did not authorize Stockton or the Doe Defendants to access the Ashley Gmail Account after she was no longer employed with Stockton.

155.    Stockton's and the Doe Defendants' actions caused Ashley Hoehn loss, harm and damages, and she is entitled to be compensated for losses and any other amount to be proven at trial.

## COUNT VI
**(Violation of the Alabama Digital Crime Act as to Christopher Hoehn)**

156.    Christopher Hoehn repeats and realleges the foregoing allegations as if fully set forth herein.

28

157.    Stockton and the Doe Defendants violated and attempted to violate Ala. Code § 13A-8-112.

158.    Christopher Hoehn brings this claim under Alabama law, which authorizes a private right of action for the Alabama Digital Crime Act.

159.    Stockton and the Doe Defendants violated and attempted to violate Ala. Code § 13A-8-112(a)(3) because Stockton and the Doe Defendants, without authority or in excess of any limited authority it or they was/were granted, "disclos[ed], us[ed], control[ed], or [took]" data from a computer, computer system or network, specifically the Chris Gmail Account.

160.    Stockton's and the Doe Defendants' access was without authorization, or exceeded authorization, because Christopher Hoehn never authorized Stockton or the Doe Defendants to access the Chris Gmail Account during his employment with Stockton.

161.    Stockton's and the Doe Defendants' access was also without authorization because Christopher Hoehn did not authorize Stockton or the Doe Defendants to access the Chris Gmail Account after he was no longer employed with Stockton.

162.    Stockton's and the Doe Defendants' actions caused Christopher Hoehn loss, harm and damages, and he is entitled to be compensated for losses and any other amount to be proven at trial.

29

## PRAYER FOR RELIEF

WHEREFORE, Ashley Hoehn and Christopher Hoehn demand judgment against Stockton and the Doe Defendants as follows:

a.    A permanent injunction restraining Stockton and the Doe Defendants, and any other employees, executives, agents, attorneys, contractors, or others acting on Stockton's behalf, from accessing the Ashley Gmail Account;

b.    A permanent injunction restraining Stockton and the Doe Defendants, and any other employees, executives, agents, attorneys, contractors, or others acting on Stockton's behalf, from accessing the Chris Gmail Account;

c.    A permanent injunction barring Stockton and the Doe Defendants from using the illegally obtained data in this proceeding, any future legal proceeding before any tribunal, or for any other future purpose;

d.    A permanent injunction barring Stockton and the Doe Defendants from any further disclosure, profit or use of the illegally obtained data;

e.    Compensatory damages in an amount to be determined at trial;

f.    Punitive damages for willful and intentional violations of Title 18, United States Code, Section 2701;

g.    Attorneys' fees and costs;

h.    Pre-judgment and post-judgment interest; and

i.    All other equitable or legal relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:          March 18, 2026          Respectfully submitted,

MASSEY, STOTSER & NICHOLS, PC

By:    */s/ Daniel J. Wisniewski*
     Daniel J. Wisniewski
     1780 Gadsden Hwy
     Birmingham, AL 35235
     (205) 938-9090
     dwisniewski@msnattorneys.com

FAEGRE DRINKER BIDDLE & REATH LLP

By:    */s/ Craig R. Heeren*
    Craig R. Heeren (*pro hac vice pending*)
    1177 Avenue of the Americas, 43rd Floor
    New York, New York 10036
    (212) 248-3140
    craig.heeren@faegredrinker.com

    Paul A. Rosenthal (*pro hac vice pending*)
    600 Campus Drive
    Florham Park, New Jersey 07932
    (973) 549-7030
    Paul.rosenthal@faegredrinker.com

    Justin O. Kay (*pro hac vice pending*)
    1144 15th Street, Suite 3400
    Denver, Colorado 80202
    (303) 607-3581
    Justin.kay@faegredrinker.com

*Attorneys for Plaintiffs Christopher Hoehn and Ashley Hoehn*

32